GEBHARDT, and another, d/b/a Fair Park Ice Arena, Respondents, v. CITY OF WEST ALLIS, Appellant.

Supreme Court

*No. 76–520. Argued March 28, 1979.—*
*Decided May 1, 1979.*
(Also reported in 278 N.W.2d 465.)

For the appellant there were briefs and oral argument by *Michael J. Sachen,* city attorney.

For the respondents there was a brief by *Thomas N. Klug, Robert C. Burrell* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee, and oral argument by *Mr. Klug.*

COFFEY, J.   The respondents, Richard Gebhardt and William Sommer, operate an ice skating facility doing business under the name of Fair Park Ice Arena. The ice rink is located in a building constructed upon land leased from the State of Wisconsin in the Wisconsin State Fair Park, West Allis, Wisconsin. The lease term is for a period of ten years with the respondents retaining the right to renew the lease for an additional ten years. The lease terms provided that the respondents could operate an ice arena on the state lands if they would construct a "permanent-type" facility at their own expense and according to design specifications furnished by the state. The respondents, pursuant to the recited lease provision, constructed the arena in 1973 at a cost of nearly $500,000.

In 1974 the city assessor undertook an assessment of all real and personal property deemed taxable within the city of West Allis and assessed the building, its equipment, furniture and fixtures as personal property of the respondents. These items were valued at $128,150. The building was valued at $125,000 and the equipment, furniture and fixtures were valued at $3,150. The total assessment valuation resulted in an annual tax levy of $15,544.59.

■

The respondents paid the 1974 personal property taxes under protest and on or about February 28, 1975 presented the West Allis Common Council with a claim for a tax refund. On June 17, 1975 the Common Council disallowed the tax refund. The following month, pursuant to sec. 74.73(1), Stats.,[1] the respondents commenced this action against the city of West Allis seeking a refund of their personal property tax assessment. The action disputes only the building's tax assessment and concedes that the assessment on the furniture, fixtures and equipment was proper. The case was submitted to the trial court on stipulated facts, supplemented by oral testimony of the respondent, Richard Gebhardt, and the deputy city tax assessor, Leonard A. Klafka. The parties in the aforementioned stipulation agreed that the court's determination of this action will govern the legality of the personal property tax assessment on the ice arena for the year 1974 and all future years in which the property is subject to the lease agreement. The trial court's memorandum decision, in summation, reads in part as follows:

[1] "74.73. **Recovery of illegal taxes plus interest; limitation.** (1) Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing claims in other cases. If it appears that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the town board, village board of common council may allow and the town, city or village treasurer shall pay such person the amount of the claim found to be illegal and excessive. If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate computed from the date of filing the claim. Every such claim shall be filed, and every action to recover any money so paid shall be brought, within one year after such payment."

"A look at the bundle of sticks in this case would show that the ownership stick, that is, the title ownership, was in the State of Wisconsin . . .

"Considering all of the above, many of the sticks of the bundle of beneficial ownership fall into the basket of the State, while some remain in the basket of the plaintiffs. Considering the totality of the needs and the goals of the different functions of the different parties, it appears that the State is the beneficial owner of these premises, that the plaintiffs lease the premises at a time when the premises are not needed for the State's purposes. Even while they exercise their right, its goal is to assist in a governmental function; and the State not only receives rental, it receives revenue. The State retains unusual control over the premises, receives benefits from its use and through its user. It is, therefore, the real and beneficial owner and the property is exempt under Section 70.11(1) of the Wisconsin Statutes from taxation.

"The plaintiffs are entitled to judgment for the personal property taxes paid."

Appeal is taken from the February 25, 1977 judgment entered in favor of the plaintiffs-respondents.

The lease terms and other relevant facts will be discussed within the body of this opinion.

*Issue.*

Whether pursuant to sec. 70.17(1), Stats., the respondents own the property and are subject to the general personal property taxes as delineated in Ch. 70?

A municipality within this state is empowered to levy the general property tax within the dictates of ch. 70, Stats. Pursuant to sec. 70.17(1) the city of West Allis and other municipalities are permitted to assess buildings as personal property rather than real property. The statute recites:

"**70.17 Lands, to whom assessed; buildings on exempt lands.** (1) Real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without

any name. The person holding the contract or certificate of sale of any real property contracted to be sold by the state, but not conveyed, shall be deemed the owner for such purpose. The undivided real estate of any deceased person may be entered to the heirs of such person without designating them by name. The real estate of an incorporated company shall be entered in the same manner as that of an individual. *Improvements on leased lands may be assessed either as real property or personal property.*" (Emphasis supplied.)

■

In *Town of Menominee v. Skubitz,* 53 Wis.2d 430, 192 N.W.2d 887 (1972), the court noted that in some circumstances the occupant of the building may be charged with the personal property tax rather than the building's title owner:

"The reason for this varied treatment is obvious. In most cases, a landlord leases land and building together, retaining ownership and substantial control over improvements. There is certainly no reason to assess the improvements against the lessee in such a case. However, occasionally, the land alone is leased for a long term, and the tenant erects improvements thereon, reserving the right to remove the improvements at the end of the lease term. In that case, there is little or no justification in taxing the lessor for the improvements as part of his real estate. In *State ex rel. Hansen Storage Co. v. Bodden* (1917), 166 Wis. 219, 164 N.W. 1009, this court held that a building erected by respondent on property leased from a railroad should not be assessed as real estate, since it was built for a temporary purpose and since the lessee had the right to remove it at the end of the term of the lease." *Id.* at 438.

West Allis contends that for purposes of sec. 70.17(1), Stats., and the ch. 70 taxing power the respondents are the owners of the ice arena and can be assessed a personal property tax on the structure as an improvement to real estate. The respondents, on the other hand, argue that the state owns not only the land but also the building constructed thereon and as the owners of this prop-

erty, the state is exempt from the general property tax levy pursuant to sec. 70.11(1).[2]

On previous occasions this court has held that pursuant to ch. 70, Stats., ownership of the property for purposes of the general property tax is to be distinguished from legal title. In *American Motors Corp. v. Kenosha,* 274 Wis. 315, 80 N.W.2d 363 (1957), this distinction was emphasized in the following language:

". . . taxation or exemption depends not upon the legal title but on the status of the owner of the beneficial interest in the property. In other words, the court always looks to the substance and not to the form." *State ex rel. Wisconsin University Building Corp. v. Bareis,* 257 Wis. 497, 505, 44 N.W.2d 259 (1950). *Id.* at 320.

This distinction was again highlighted in *Mitchell Aero, Inc. v. Milwaukee,* 42 Wis.2d 656, 168 N.W.2d 183 (1969), where this court explained:

". . . the tax exemption cases seem to be consistent in construing 'owned' as meaning something substantially more in the way of enjoyment or the possession of other indicia of ownership than bare or paper title."
". . .
"Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case

---

[2] "(1) PROPERTY OF THE STATE. Property owned by this state except land contracted to be sold by the state. This exemption shall not apply to land conveyed after September, 1933, to this state or for its benefit while the grantor or others for the grantor's benefit are permitted to occupy the land or part thereof in consideration for the conveyance; nor shall it apply to land devised to the state or for its benefit while another person is permitted by the will to occupy the land or part thereof. This exemption shall not apply to any property acquired by the department of veterans affairs under s. 45.72(5) and (7)."

in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership." *Id.* at 660–662.

Further, the *Mitchell Aero* decision holds that "real or true ownership" for purposes of the property tax should be determined by undertaking an analysis of the lease as related to the facts and circumstances surrounding the case. *Supra* at 661.

In the present case, an analysis of the lease reveals that both the state and the respondents possess some of the rights and benefits usually associated with an ownership interest in a building. Pursuant to the terms of the lease the respondents' indicia of ownership include the following factors: (1) the building was constructed at their sole expense; (2) the respondents enjoyed the use and benefits of the ice arena for ten months out of every year; (3) the lease requires the respondents to maintain and keep the premises in proper repair; (4) the respondents are required to carry full fire and extended coverage on the building and its contents and (5) under the terms of the lease the respondents bear the risk of loss should the ice arena be destroyed during the lease period.

The city of West Allis contends these ownership indicia noted above are similar to the facts of *Mitchell Aero v. Milwaukee, supra.* In *Mitchell Aero v. Milwaukee* the plaintiff constructed an airplane hangar at their own expense on land leased from the county of Milwaukee at Mitchell Field. The court, based upon Mitchell Aero's substantial ownership rights over the airplane hangar, found there was no merit to their claim that the building was owned by the county and therefore exempt from general property taxes.

However, contrary to the city's contentions in this case the facts of *Mitchell Aero v. Milwaukee* are distinguishable. In the earlier case, the plaintiff used the airplane hangars rent-free during the 20-year lease term. In the

present case, the lease between the state and respondents is for 10 years with a 10-year renewal option and provides for a sliding rent scale based upon the number of years since the commencement of the lease and a percentage of the gross receipts from the operation of the respondents' business.

The primary difference between the *Mitchell Aero* lease and the lease under present review pertains to the control exercised by the respective lessors over the business operation of their tenants. In *Mitchell Aero, Inc. v. Milwaukee, supra,* a detailed analysis of this factor was not made, but the court concluded the following:

"This arrangement does not constitute a conventional conveyance and leaseback and there are several provisions in the lease inconsistent with or certainly unusual in a conventional lease of land and buildings. Such control the county keeps over these hangars is not indicative of true ownership but concerns the operation of the airport. We cannot view this arrangement as a bona fide conveyance of the buildings, the cost of which is treated as prepaid rent. It does not purport to be that." *Id.* at 665.

In the instant case, the control possessed by the state over the respondents' business practices militates against the appellant's claim that the respondents maintain beneficial ownership over the building. Significant instances of the state's interference with the respondents' business operations include the following:

1. While the building was constructed at the expense of the respondents, the actual plans for the building had to be approved by the state and the state also selected the specific site or location for the building.

2. The lease provided that if the ice arena was not substantially completed by July 1, 1974, the lease would terminate and the state would own the structural improvements then completed.

3. The respondents' use of the skating facility is limited to "ice skating related sports and recreation" and the state's permission is needed in order to conduct any other sport activity.

4. The state enjoys the exclusive right to the use of the arena, without charge, for two months a year. During the two-month period, the state uses the building for two weeks as an exhibition hall for the State Fair. During the remainder of the two months, the state has the right to rent the facility to others and retain all proceeds it receives. The state has exercised the right to use the property only during the month of August.

5. After construction of the building was completed, the state, as lessor, requested that several additions and changes be made in the building in order to improve the adaptability of the building to the state's use during the annual State Fair exhibition. Specifically, the respondents were required to install additional electrical outlets, more exit doors in order to accommodate State Fair crowds and installation of an overhead door to facilitate the loading of materials for fair exhibitions. These improvements inured only to the state's benefit and were installed at a cost to the respondents totalling some $15,000. The state also has prevented the respondents from installing permanent bleachers in the building because that would restrict or limit the state's use of the building during fair time.

6. Throughout the entire year the state controls and operates the only concession or refreshment stand in the ice arena building and the state is the only one with access to the concession area. Further, the lease prohibits the respondents from selling any items identical to what is sold in the state's concession stand.

7. The state has keys to all the doors in the ice arena and building and is able to enter or leave the building as it wishes during the lease term.

8. Pursuant to the terms of the lease, the state requires the respondents to specifically post their hours and fees and cater to special groups in the neighborhood area.

9. The state does not permit the respondents' customers to enter the Fair Park when the state is sponsoring a special event such as automobile races, snowmobile races or concerts.

10. The lease restricts the respondents' right to sell, convey, let or sublet the building or any portion of the building to another unless they obtain the prior written consent of the state.

11. When the lease terminates the respondents have the right to remove their personal property (*i.e.*, furniture and equipment) from the building, but if the removal causes any damage to the building, then the respondents have the duty to repair that damage.

Further, the lease in this case is distinguishable from the lease considered in the *Mitchell Aero* case in their respective treatment of the lessees' duty to maintain fire and extended insurance. In *Mitchell Aero* the plaintiff was required to secure an insurance policy to the extent of 80% of the building's insurable value. The court found this factor significant as an indication that the lessee exercised true and beneficial ownership and thus the building was taxable pursuant to sec. 70.17 (1), Stats. In this regard, the court stated:

"The lease is silent on who pays for the repairs in the event of fire if the insurance proceeds received by the lessee are not sufficient to make such repairs. The compulsory standard fire policy in Wisconsin, ch. 203, Stats., insures only to the extent of the insured's interest; consequently, the intent of the parties to the lease must have been that the lessee had a substantial insurable interest in the hangars since it was required to insure up to 80 percent of the insurable value." *Mitchell Aero, Inc. v. Milwaukee, supra* at 664.

West Allis argues that pursuant to the insurance and risk of loss clauses the respondents exercise true and beneficial ownership over the ice arena. It is contended that if the building is destroyed, the respondents are permitted to decide against rebuilding the structure and their investment costs can be recovered from the insurance proceeds. However, this analysis ignores that the lease provides that the state is to be named an "additional insured to the extent that its interest may appear." Insofar as the state has a complete possessory interest in the building upon expiration of the lease, as the lease period progresses the state's insurable interest increases while during the same period the respondents' insurable interest diminishes. Consequently, the respondents' interest in this property is not analogous to the insurable interest held by the lessees in *Mitchell Aero*.

West Allis also contends that because the respondents have been depreciating their capital expenditure in the building this constitutes an indicia of true and beneficial ownership. This argument is unpersuasive as sec. 167 (a) (1) of the Internal Revenue Code and the accompanying Tax Reg. §1.167(a)–4 and §3.30(1) TAX of the Wis. Admin. Code permit lessees to depreciate or amortize a capital improvement made to a lessor's property.[3] This

---

[3] "§1.167(a)–4. Leased property.—Capital expenditures made by a lessee for the erection of buildings or the construction of other permanent improvements on leased property are recoverable through allowances for depreciation or amortization. If the useful life of such improvements in the hands of the taxpayer is equal to or shorter than the remaining period of the lease, the allowances shall take the form of depreciation under section 167. See §§1.167(b)–0, 1.167(b)–1, 1.167(b)–2, 1.167(b)–3, and 1.167(b)–4 for methods of computing such depreciation allowances. If, on the other hand, the estimated useful life of such property in the hands of the taxpayer, determined without regard to the terms of the lease, would be longer than the remaining period of such lease, the allowances shall take the form of annual deductions from gross income and in an amount equal to the unrecovered cost of

court will not penalize the respondents for taking a valid deduction that they are entitled to as lessees who have made capital improvements to leasehold property.

We hold that the record clearly supports the trial court's finding that ownership of the ice arena rested in the state and that the indicia of ownership attributed to

such capital expenditures divided by the number of years remaining of the term of the lease. Such deductions shall be in lieu of allowances for depreciation. See section 162 and the regulations thereunder. See section 178 and the regulations thereunder for rules governing the effect to be given renewal options in determining whether the useful life of the improvement exceeds the remaining term of the lease where a lessee begins improvements on leased property after July 28, 1958, other than improvements which on such date and at all times thereafter, the lessee was under a binding legal obligation to make. Capital expenditures made by a lessor for the erection of buildings or other improvements shall, if subject to depreciation allowances, be recovered by him over the estimated life of the improvements without regard to the period of the lease. [Reg. §1.167(a)–4.]"

"Tax 3.30 Depreciation and amortization, leasehold improvements: corporations. (section 71.04(2), Wis. Stats.) (1) Buildings erected on leased land and equipment or improvements permanently attached to leased property, title of which passes to the lessor, the physical life of which is less than the term of the lease, should be written off by the lessee through depreciation charges over the depreciable life of the property, regardless of the term of the lease. In case the life of the property extends beyond the term of the lease, the tax cost of the property normally should be written off over the term of the lease. If a lease is renewed before the end of the amortization period, the lessee must write off the unamortized leasehold improvements as of the date of renewal over the remaining life of the property or the term of the lease, whichever is shorter. In cases in which the lease contains an unexercised option of renewal, the matter of amortizing the tax cost over the term of the original lease plus the renewal period or periods, depends upon the facts in the particular case. When the facts show with reasonable certainty that the lease will be renewed, the tax cost of improvements should be amortized over the term of the original lease plus the term of the renewal period or periods, except in cases where the physical life of the property would be less than such combined terms."

the respondent are not persuasive to the court to constitute true and beneficial ownership pursuant to ch. 70. Also controlling is the fact that upon expiration of the lease the state acquires a full and complete possessory interest in the property. Further, the state's past financial benefit from the building's operation must also indicate its substantial ownership rights. In 1975, the respondents' income from the property was $81,000 for the ten-month period; while the state received $62,695 in rental proceeds during the two-month period it enjoyed exclusive use of the building and netted $4,896 in profit from operating the concession stand throughout the year.

We note that public policy favors this type of tax-exempt treatment for conveyance-leaseback arrangements between private enterprise and governmental bodies. This lease arrangement fulfills a public function at no expense to the taxpayers.

*By the Court.*—Judgment affirmed.