CITY OF FRANKLIN, Plaintiff-Appellant,

v.

CRYSTAL RIDGE, INC. and Midwest Development Corp.,
Defendants-Respondents.†

Court of Appeals

*No. 91–2120. Submitted on briefs November 4, 1992.—Decided
January 26, 1993.*

(Also reported in 497 N.W.2d 747.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jesse A. Wesolowski* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Paul A. Piaskoski* and *Anthony A. Coletti* of *Piaskoski & Associates, S.C.,* of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

FINE, J.   The City of Franklin appeals the trial court's dismissal of its amended complaint. Franklin sought judgment compelling the defendants to pay personal property taxes for 1987 and 1988 in connection with a ski chalet and another building constructed by Midwest Development Corp. on land owned by Milwaukee County. Crystal Ridge, Inc., manages the ski operation pursuant to an agreement with Midwest. The trial court determined that the defendants were exempt from taxation by virtue of section 70.11, Stats. We reverse.

Section 70.01, Stats., authorizes the levy of taxes "upon all general property in this state except property that is exempt from taxation." "General property" is defined as "taxable real and personal property" as specified in sections 70.03 and 70.04, Stats.[1] Section 70.02, Stats. Section 70.17(1), Stats., permits "[i]mprovements

---

[1] Section 70.03, Stats., provides:

> The terms "real property", "real estate" and "land", when used in chs. 70 to 79, shall include not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto, except that for the purpose of time-share property, as defined in s. 707.02(32), real property does not include recurrent exclusive use and occupancy on a periodic basis or other rights, including, but not limited to, membership rights, vacation services and club memberships.

Section 70.04, Stats., provides, in pertinent part:

> The term "personal property", as used in chs. 70 to 79, shall include all goods, wares, merchandise, chattels, and effects, of any nature or description, having any real or marketable value, and not included in the term "real property," as defined in s. 70.03.

on leased lands" to be "assessed either as real property or personal property." "Property owned by any county" is exempt from the general property tax authorized by section 70.01. Section 70.11(2), Stats. Additionally, the fact that property exempted from taxation by section 70.11(2) is leased "does not render that property taxable." Section 70.11(2). The issue here is thus whether the ski chalet and the other building constructed by Midwest on county land is exempt from taxation under section 70.11(2). Resolution of that issue would ordinarily turn on whether the chalet and the other building is "owned," within the meaning of section 70.11(2), by Midwest or whether it is "owned" by Milwaukee County.

■

"Ownership" for purposes of section 70.11(2), Stats., depends on which party has the most significant "beneficial interest in the property," *Gebhardt v. City of West Allis*, 89 Wis. 2d 103, 108, 278 N.W.2d 465, 467 (1979) (citation omitted), and must be determined under the particular "facts and circumstances surrounding the case," *id.*, 89 Wis. 2d at 108-109, 278 N.W.2d at 468. As with some other disputes similar to the one presented to us on this appeal, the contract between Midwest and Milwaukee County apportioned to each "some of the rights and benefits usually associated with an ownership interest in a building." *See Gebhardt*, 89 Wis. 2d at 109, 278 N.W.2d at 468. We need not determine, however, whether the bundle of rights granted to Midwest made it the property's "owner" for taxation purposes.

Midwest unambiguously agreed in its contract with Milwaukee County "to pay *all* licenses, fees and *taxes levied by and all levying authorities* for the term of this lease against Leased Premises including buildings and other improvements" it would construct. (Emphasis added.) The City of Franklin, a "levying authority," is a

third-party beneficiary of this lease-provision, and may, accordingly, enforce it.[2]

A person may enforce a contract as third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit. *Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis. 2d 363, 371-372, 260 N.W.2d 721, 725-726 (1978); *Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692, 699, 139 N.W.2d 606, 609 (1966) ("In order to entitle a stranger to a contract to recover thereon, the contract must indicate an intention to secure some benefit to such third party."). Under the standard rules of contract construction, we ascertain intent of contracting parties from the language that embodies their agreement, and that language governs if it is unambiguous—even in the face of a different interpretation the parties themselves may have placed on the agreement. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702-703 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). "[A] clear contractual provision must be construed as it stands." *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 502, 476 N.W.2d 280, 282 (Ct. App. 1991). Contractual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). The meaning of a contract,

---

[2] The dissent characterizes this clause as "an allocation of risk." Dissent at 364. It is not—Milwaukee County would not have been liable for the taxes here irrespective of whether or not those taxes were Midwest's responsibility. Simply put, there was no "risk" to allocate because Milwaukee County is exempt from taxation. Section 70.11(2), Stats.

including the determination of whether its terms are ambiguous, is a legal matter that we decide *de novo. Ibid.* We may not use the mechanism of construction to revise an unambiguous contract in order to relieve one of the parties "from any disadvantageous terms" to which he or she has agreed. *See Dykstra*, 92 Wis. 2d at 38, 284 N.W.2d at 703.

The language in the lease between Milwaukee County and Midwest could not have been more clear or more specific. As noted, Midwest agreed "to pay all licenses, fees and taxes levied by and all levying authorities for the term of this lease against Leased Premises including buildings and other improvements." The clarity of this language renders immaterial Midwest's contention that neither it nor Milwaukee County intended their contract to benefit either Franklin or other levying authorities.[3] Although Midwest argues, and the trial court concluded, that this clause does not prevent Midwest from challenging its obligation under *Gebhardt* to pay the tax levied by Franklin, such a reading would undercut and leave meaningless the clear contractual language.[4]

---

[3] Midwest has attached to its supplemental brief an affidavit by an assistant corporation counsel for Milwaukee County in support of its argument. As noted in the main body of this opinion, the affidavit's speculations concerning the parties' intent are non-material in face of the contract's unambiguous and controlling language to the contrary. Additionally, it is not properly part of the record, to which we are limited. *See In Matter of Guardianship of Eberhardy*, 102 Wis. 2d 539, 571, 307 N.W.2d 881, 895 (1981); *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980).

[4] We do not mean to imply, however, that Midwest may not challenge the amount levied, the underlying assessment, or any

363

*By the Court.*—Order reversed.

SULLIVAN, J. (*dissenting*). As the majority correctly points out, county-owned property is exempt from the general property tax authorized by section 70.01, Stats. *See* Section 70.11(2), Stats. Thus, if the county owns the property in question, that property is not subject to tax. To determine ownership in this context, we must examine the surrounding facts and circumstances of the case to determine which party has the most significant "beneficial interest in the property." *Gebhardt v. City of West Allis*, 89 Wis. 2d 103, 108, 278 N.W.2d 465, 467 (1979).

This writer cannot agree with the majority's statement that ownership need not be determined. The contractual clause on which the majority bases its opinion is nothing more than an allocation of risk. That is to say, the parties to the contract merely agreed that Midwest assumed the risk of any licenses, fees and taxes that may be levied. It does not follow, however, that Midwest agreed to pay all taxes, whether valid or invalid. Nor does the clause unambiguously state that Midwest admits that it is the beneficial owner.

This writer questions the majority's implicit assumption that two parties, by their contract, can decide whether or not property is taxable. In *Gebhardt,* the court repeated the rule that " 'taxation or exemption depends not upon the legal title but on the status of the owner of the beneficial interest in the property. In other words, *the court always looks to the substance and not to the form.*' " *Gebhardt*, 89 Wis. 2d at 108, 278 N.W.2d at 467 (quoting *American Motors Corp. v. Kenosha*, 274 Wis. 315, 320, 80 N.W.2d 363, 365 (1957)) (emphasis

other matter that may be challenged by one obligated to pay taxes.

364

added). Likewise, even if I were to agree, which I do not, that the clause in question unambiguously stated that Midwest was the beneficial owner, this court should not accept the parties' characterization of beneficial ownership, but rather, we should seek to determine the "real or true" owner.

I would affirm the trial court's determination that Milwaukee County was the beneficial owner of the property.

Midwest Development Corp. entered into an agreement with Milwaukee County that Midwest would develop, at its own expense, and operate a ski hill on county land. Crystal Ridge, Inc., by agreement with Midwest, operates the ski hill. As part of the initial development, Midwest allowed for the dumping of landfill at the site. This landfill activity generated revenues, which Midwest and the county split equally by the terms of their agreement. Midwest's portion of the landfill revenues, however, could be used only to further improve the facilities. By the terms of the agreement, the county's approval was required for the design of all buildings and other improvements, the use of the land for activities other than down-hill skiing, and any fees to be charged. The county retained the right to enter the premises at reasonable times, and to use the bridle and cross-country ski path on the land. The agreement set the rental payment to the county as the greater of 3% of gross profits, or $10,000. The lease required Midwest to provide to the county proof of fire and extended coverage insurance of at least 80% of the insurable value of the buildings and other improvements. At the expiration of the lease, the county retained the right to take possession of all permanent improvements except the ski lift, without any compensation to Midwest or Crystal Ridge.

365

I would hold that under *Gebhardt*, 89 Wis. 2d 103, 278 N.W.2d 465, Milwaukee County is the beneficial owner of the property for the purposes of section 70.11(2), Stats. Thus, I respectfully dissent.