CITY OF FRANKLIN, Plaintiff-Appellant,

v.

CRYSTAL RIDGE, INC. and Midwest Development
Corporation, Defendants-Respondents-Petitioners.

Supreme Court

*No. 91–2120. Oral argument November 30, 1993.—Decided
January 19, 1994.*

(Also reported in 509 N.W.2d 730.)

For the defendants-respondents-petitioners there was a brief by *Paul A. Piaskoski* and *Piaskoski & Associates, S.C.,* Milwaukee and oral argument by *Paul A. Piaskoski.*

For the plaintiff-appellant there was a brief and oral argument by *Jesse A. Wesolowski,* City Attorney, Milwaukee.

STEINMETZ, J.   The issue in this case is: Are the ski chalet and rental building, located in the city of Franklin (the city) on real estate owned by Milwaukee county (the county), exempt from general property taxes under sec. 70.11(2), Stats.[1] The city brought an

---

[1] Section 70.11(2), Stats., provides as follows:

**70.11 Property exempted from taxation.** The property described in this section is exempted from general property taxes. Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and if the lessee would be exempt from taxation under this chapter if it owned the property. Any lessor who claims that leased property is exempt from taxation under this chapter shall, upon request by the tax assessor, provide records relating to the lessor's use of the income from the leased property. Property exempted from general property taxes is:

. . . .

**(2)** Municipal property and property of certain districts, exception. Property owned by any county, city, village, town, school district, vocational, technical and adult education district, public inland lake protection and rehabilitation district, metropolitan sewerage district, municipal water district created under s. 198.22 or town sanitary district; lands belonging to cities of any other state used for public parks; land tax-deeded to any county or city before January 2; but any residence located upon property owned by the county for park purposes which is rented out by the county for a nonpark purpose shall not be exempt from taxation. Except as to land acquired under s. 59.965 (2) (d) this exemption shall not apply to land conveyed after August 17, 1961, to any such governmental unit or for its benefit while the grantor or others for his or her benefit are permitted to occupy the land or part thereof in consideration for the conveyance. Leasing the property exempt under this subsection, regardless of the lessee and the use of the leasehold income, does not render that property taxable.

action against Midwest Development Corp. (Midwest) and Crystal Ridge, Inc. (Crystal Ridge) to collect property taxes that the city levied on two buildings constructed by Midwest on land leased from the county. The circuit court for Milwaukee county, the Honorable Francis T. Wasielewski, dismissed the complaint, holding that the county is the beneficial owner of the buildings, and hence, the buildings are exempt from taxation.

The court of appeals reversed. *Franklin v. Crystal Ridge,* 174 Wis. 2d 358, 364, 497 N.W.2d 747 (Ct. App. 1993). The court did not address the issue of ownership. Rather, the court determined that Midwest agreed, in the lease with the county, to pay all taxes, regardless of exemptions. We now reverse the court of appeals' decision and hold that the buildings are exempt from general property taxes and that Midwest did not agree to waive the exemption and pay the taxes.

The parties stipulated to the facts. The county originally planned to develop a ski hill and recreational facility on a 100 acre parcel of land located in the cities of Franklin and Greendale. However, objections from the Wisconsin Department of Natural Resources prevented the county from carrying out its plan.

Midwest proposed construction of a ski hill, ski chalet and other improvements on the same land at no cost to taxpayers. The county accepted this proposal and embarked on a joint venture with Midwest to develop, construct and operate "a down hill facility with restaurant/chalet and parking lot and other sports activities for all seasons. . . ."

In July, 1983, the county entered into a lease with Midwest for this parcel of county-owned land. The lease is for ten years, with three five-year option peri-

ods. Midwest pays rent to the county of the greater of three percent of gross profits or $10,000 per year.[2]

The terms of the lease required Midwest to construct, at its own expense, a 75 foot high ski hill along with buildings and other improvements to the land costing "in excess of $500,000." The lease gave the county control over the location and the grade of the ski hill and required that the county approve the design, specifications, construction and placement of all buildings and other improvements on the premises. In addition, the lease required that Midwest's construction schedule for the buildings and ski hill follow the time and expenditure schedules approved by the county.

Midwest began construction of the ski hill in 1984 using landfill material dumped at the site. The lease required that the county and Midwest share the revenue from the dumping fees equally, with Midwest to use all of its revenue from these fees to "improve the facility." These fees were subject to the county's approval and record-keeping and audit requirements.

Between the dumping fees and rent, the county realized total earnings of $744,569 for the five-year period ending in 1988. Midwest, on the other hand, reported no net income for the same period and actually operated the ski hill at a loss of $83,694.

Since the ski facility, Crystal Ridge Ski Hill,[3] has been in operation, the county has exercised substantial control. The county must approve all activities on the

---

[2] The ski operations have never yielded sufficient revenue to trigger the percentage provision.

[3] Crystal Ridge physically occupies and manages the ski hill. However, Midwest remains the sole lessee and legal occupant. The lease does not allow Midwest to assign the lease or sublet any portion of the leased premises without the county's

land. Midwest must maintain the type of accounting records specified by the county, must give the county audited annual reports, and must use the cash management equipment specified by the county. The county must approve all of the fees for lift tickets as well as the prices of ski rental, food and other items sold and rented at the chalet and rental building. The county even exercises some control over the restaurant menu and hours of operation of the chalet.

The lease requires Midwest to provide insurance for the ski operation. Midwest must carry $1 million of liability insurance, naming the county as an insured. Furthermore, Midwest must provide fire insurance in an amount not less than 80 percent of the full insurable value of the buildings and must rebuild the chalet if it is damaged by fire.[4] Although the county is not named in this insurance policy, Midwest must supply the county with a certificate of insurance.

If Midwest abandons the premises or terminates the lease, all improvements on the land become the county's property. The county is not required to buy back or pay Midwest for the buildings and other improvements unless the county terminates the lease to use the premises as something other than a ski facility.

Midwest only uses the land for downhill skiing approximately three and one-half months each year. During the remainder of the year, the chalet is closed. While the county does not have keys to the buildings, representatives of the county may enter the premises at any reasonable time.

---

written approval, and Midwest has never requested the county's approval to sublet or assign the lease to anyone.

[4] If the chalet is totally destroyed, Midwest may terminate the lease.

Midwest's bank does not regard the two buildings as Midwest's property. The bank has refused to consider these buildings as mortgageable property or as collateral for loans.

In 1987, the city assessed personal property taxes of $8,150.24 against Midwest for improvements on the leased lands. Midwest refused to pay that portion of the taxes corresponding to the ski chalet and the rental building, claiming that the property is exempt from taxation.

The city brought this action in the circuit court for Milwaukee county to compel Midwest to pay taxes on the buildings. The court dismissed the complaint, holding that the county is the beneficial owner, and thus, the property is exempt from taxation pursuant to sec. 70.11(2), Stats.

The court of appeals reversed. *Franklin,* 174 Wis. 2d at 364. That court did not determine who owned the property. Rather, it looked to a clause in the lease agreement that required Midwest to "pay all licenses, fees and taxes levied by any and all levying authorities for the term of this lease against Leased Premises including buildings and other improvements." According to the court of appeals, Midwest agreed in this clause to pay property taxes on the two buildings, regardless of exemptions. The court held that the city of Franklin, as a third party beneficiary, could enforce this contractual provision and require Midwest to pay property taxes. We accepted this case on a petition for review to determine whether the two buildings are exempt from taxation and whether Midwest agreed to pay property taxes, despite any exemptions.

Property owned by any county is exempt from the general property tax. Section 70.11(2), Stats. "Leasing

the property exempt under this subsection, regardless of the lessee and the use of the leasehold income, does not render that property taxable." *Id.* Thus, if the county is the owner of the ski chalet and the rental building, then that property is exempt from taxation.

This court has held that ownership, for purposes of the general property tax, depends not on legal title, but rather on the status of the owner of the beneficial interest in the property. *See e.g. Gebhardt v. City of West Allis,* 89 Wis. 2d 103, 108, 278 N.W.2d 465 (1979). We must, therefore, determine whether the county is the beneficial owner of the two buildings. To do this, we weigh the indicia of ownership of the county against the indicia of ownership of Midwest. *See id.* at 109–12; *Mitchell Aero, Inc. v. Milwaukee,* 42 Wis. 2d 656, 663–65, 168 N.W.2d 183 (1969). Because the facts in this case are undisputed, this balancing test is a question of law which this court reviews *de novo. See State v. Schantek,* 120 Wis. 2d 79, 82, 353 N.W.2d 832 (Ct. App. 1984).

When this court has applied this balancing test in other cases, the results have varied. In *Mitchell Aero,* 42 Wis. 2d at 665, we held that a private aviation company, not Milwaukee county, was the beneficial owner, for property tax purposes, of two airplane hangers located on land that the company leased from the county. On the other hand, in *Gebhardt,* 89 Wis. 2d at 114–15, we held that the state of Wisconsin, not two private investors, was the beneficial owner of an indoor ice skating facility located on land leased from the state.

In this case, both parties possess some of the rights, responsibilities and benefits associated with ownership of the two buildings. Midwest's indicia of

ownership include the following: 1) Midwest constructed the buildings at its own expense; 2) Midwest and Crystal Ridge enjoy the use and profits from the ski facility for three and one-half months each year; 3) Midwest carries fire and liability insurance on the buildings; 4) Midwest is responsible for repairs and maintenance on the buildings; and 5) Midwest agreed to pay all licenses, fees and taxes on the property. The city argues that these features are similar to those found in *Mitchell Aero,* 42 Wis. 2d at 663–64, and indicate that Midwest is the beneficial owner of the ski chalet and the rental building.

However, several factors critical to our decision in *Mitchell Aero* are not present in this case. *See id.* First, while the private aviation company in *Mitchell Aero* paid no rent on the two airplane hangers, Midwest must pay rent to the county for the two buildings. Second, in *Mitchell Aero,* the county exercised virtually no control over the use of the hangers. Here, on the other hand, the county has a significant measure of control over the activities, fees, restaurant menu and hours of operation of the buildings. Finally, in *Mitchell Aero,* the lease required the county to pay the aviation company for the hangers in several situations—if the county condemned the leased land, if the county abandoned the land as an air terminal, or if the lessor breached a provision in the lease. In this case, the county must pay Midwest for the buildings only under one set of circumstances—if the county terminates the lease and does not use the premises as a ski facility.

The county's indicia of ownership here actually resemble the indicia of ownership of the state in *Gebhardt,* 89 Wis. 2d 110–12. The following provisions are

present in the lease in both cases: 1) the lessor[5] must approve the plans and location of the buildings; 2) the lessee can only use the land for one purpose—skating in *Gebhardt* and skiing in this case—unless the lessor gives permission to conduct other activities on the land; 3) the lessor enjoys exclusive use of the land for other purposes for a significant length of time each year;[6] 4) the lessor may enter and leave the buildings at any reasonable time; 5) the lessee may not sublet the buildings or any portion of the buildings without the lessor's prior approval; 6) the lessee must maintain insurance on the buildings naming the lessor as an additional insured; and 7) upon expiration of the lease, the lessor acquires a full possessory interest in the buildings.

In this case, the county actually asserts more control over the operation of the ski facility than the state asserted over the ice rink in *Gebhardt*. The county required Midwest to spend all of its revenue from dumping fees "to further improve the facilities." The county specifies the accounting and auditing procedures and the type of cash management equipment that Midwest must use. The county must approve the menu at the restaurant and the fees charged and hours of operation at the ski facility. Finally, Midwest may not create any lien or other obligation against the premises.

---

[5] In *Gebhardt*, the lessor was the state of Wisconsin and the lessees were the operators of the skating rink. In this case, the lessor is the county and Midwest is the lessee.

[6] In this case, the county maintains a public bridal path and cross country ski trails on the land. In *Gebhardt*, the state enjoyed exclusive use of the ice skating arena for two months each year. The state used the building as an exhibition hall for the State Fair.

In addition to these indicia of county control, two other factors indicate that Midwest is not the owner of the buildings. Financial institutions do not recognize Midwest as the owner. And the county, not Midwest, has reaped the lion's share of the profits from the ski facility.

After balancing the county's indicia of ownership against Midwest's indicia of ownership, we find that the county is the beneficial owner of the ski chalet and the rental building. Therefore, we hold that the two buildings are exempt from the general property tax pursuant to sec. 70.11(2), Stats. As a result, Midwest need not pay property taxes on the buildings unless the lease agreement somehow requires Midwest to pay these taxes despite the tax exempt status of the property.

The lease requires Midwest "to pay all licenses, fees and taxes levied by any and all levying authorities for the term of this lease against Leased Premises including buildings and other improvements." The city argues and the court of appeals agreed that this provision clearly requires Midwest to pay property taxes on the ski chalet and the rental building, regardless of statutory exemptions. In other words, the city claims that Midwest waived its right to benefit from the tax exempt status of the buildings.

We disagree. Midwest did not waive the right to benefit from the tax exempt status of the ski chalet and the rental building by agreeing to this clause in the lease. Waiver of a known right must be voluntary and intentional. *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 681, 273 N.W.2d 279 (1979). Here, the trial court implicitly found that Midwest did not voluntarily and

571

intentionally waive this right. Such a finding cannot be overturned unless it is against the great weight and clear preponderance of the evidence or unless an appellate court can conclude as a matter of law that the party's conduct reveals an intent to waive the right. *Id.* In this case, the city has presented no evidence beyond the language of the contract indicating that Midwest intended to waive this right. In addition, Midwest's conduct does not reveal an intention to waive the right. Accordingly, we find that Midwest did not waive its right to benefit from the tax exempt status of the two buildings.

■ This contractual provision is nothing more than an allocation of risk clause.[7] Midwest agreed that it will bear the burden of all taxes, licenses and fees that could be validly levied. Midwest did not agree, however, to pay invalidly assessed taxes. In this case, the two buildings are exempt from the general property tax. Hence, the city could not validly levy these taxes. We therefore reverse the court of appeals and hold that Midwest did not agree in the lease to pay property taxes on the otherwise tax exempt ski chalet and rental building.

We hold that based on the totality of the circumstances of the relationship between the county and Midwest, the county is the beneficial owner of the ski chalet and the rental building. Furthermore, we hold

---

[7] To support its contention that this contractual provision is merely an allocation of risk clause, Midwest offers the affidavit of Andrew L. Hunsick, the assistant corporation counsel for Milwaukee county. The city challenges Midwest's attempt to supplement the stipulated record. This evidence was not necessary for this court's analysis of this issue. Hence, we will not address the city's challenge to Midwest's use of this evidence.

that Midwest did not waive its right to benefit from the tax exempt status of the buildings and agree to pay taxes on this property. Hence, these two buildings are exempt from taxation.[8]

*By the Court.*—The decision of the court of appeals is reversed.

[8] Midwest also argues that the city has violated Midwest's constitutional rights to due process and equal protection by requiring it to pay property taxes on exempt property without affording Midwest the opportunity to challenge the validity of the taxes. This court will not reach these constitutional issues because our holdings on the issues of beneficial ownership and waiver completely dispose of the appeal. *See Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981).