MILWAUKEE REGIONAL MEDICAL CENTER, INC.,
Plaintiff-Respondent-Cross-Appellant-Petitioner,

v.

CITY OF WAUWATOSA,
Defendant-Appellant-Cross-Respondent.

Supreme Court

*No. 2005AP1160. Oral argument January 11, 2007.
—Decided July 17, 2007.*

2007 WI 101

(Also reported in 735 N.W.2d 156.)

For the plaintiff-respondent-cross-appellant-petitioner there were briefs by *Margaret M. Derus* and *Reinhart Boerner Van Deuren S.C.*, Milwaukee, and oral argument by *Margaret M. Derus*.

For the defendant-appellant-cross-respondent there was a brief and oral argument by *Beth Thorson Aldana,* assistant city attorney.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, reversing a judgment of the Milwaukee County Circuit Court, Jeffrey A. Kremers, Judge. *Milwaukee Reg'l Med. Ctr., Inc. v. City of Wauwatosa,* 2006 WI App 139, 295 Wis. 2d 211, 720 N.W.2d 161. The court of appeals reversed a judgment that the Milwaukee Regional Medical Center, Inc. (MRMC) was entitled to a property tax exemption under Wis. Stat. § 70.11(2)[1] for land that MRMC leases from Milwaukee County (the County) as well as the day care facility that MRMC built on the land.

¶ 2. The case commenced in 2004 when MRMC requested reimbursement for property taxes paid under protest to the City of Wauwatosa (the City) for the leased land and the day care facility. In 2003 the City assessed property taxes for 2001, 2002, and 2003 against MRMC for this property, which had been tax-

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

exempt prior to that time. MRMC paid the property taxes for all three years under protest and filed a claim with the City to recover the taxes. The City disallowed the claim, whereupon MRMC filed suit in circuit court, claiming the property was tax-exempt under either Wis. Stat. § 70.11(2) or (4).[2] Both parties moved for summary judgment. The circuit court granted MRMC's motion, holding that the property was tax-exempt under § 70.11(2) because the property was owned by the County. The court also made a non-dispositive determination that the property was not tax-exempt under § 70.11(4).

¶ 3. The City appealed, and MRMC cross-appealed. The court of appeals reversed, holding that the property was not exempt from taxation under either Wis. Stat. § 70.11(2) or (4). *Milwaukee Reg'l Med. Ctr.*, 295 Wis. 2d 211, ¶¶ 32, 36. We granted MRMC's petition for review.

¶ 4. The ultimate issue is whether the leased land and day care facility (collectively, the property) are exempt from property taxation. MRMC asks us to decide that the County is the "beneficial owner" of the property so that the property is exempt from taxation under Wis. Stat. § 70.11(2). The City asks us to decide that MRMC is the "beneficial owner" of the property and is, therefore, subject to taxation. We are also asked to determine whether MRMC qualifies for tax exemption under § 70.11(4) as an educational association.

¶ 5. We conclude that MRMC, not the County, is the beneficial owner of the property at the present time so that the property is not tax-exempt under Wis. Stat.

---

[2] Wisconsin Stat. § 70.11(2) exempts property owned by municipalities from property tax. Wisconsin Stat. § 70.11(4) exempts property that is used by an educational association for educational purposes from property tax.

§ 70.11(2), and that the property does not qualify for a tax exemption under Wis. Stat. § 70.11(4) because MRMC is not an educational association because its primary purpose is not educational. Consequently, we affirm the decision of the court of appeals.

## FACTUAL BACKGROUND

¶ 6. The parties stipulated to the facts. Hence, the following facts are taken largely from the stipulation and the supplementary documents which support the stipulation, especially the lease.

¶ 7. MRMC is a voluntary consortium of governmental and private nonprofit institutions, including the following: Children's Hospital of Wisconsin, Froedtert Hospital, the Medical College of Wisconsin, Curative Care Network, Milwaukee County Behavioral Health Division, and the Blood Center of Southeastern Wisconsin. It is organized under Wis. Stat. ch. 181 as a nonprofit, nonstock Wisconsin corporation. As a charitable organization under Internal Revenue Code § 501(c)(3), MRMC is exempt from federal income taxation. See 26 U.S.C. § 501(a), (c)(3).

¶ 8. According to MRMC's bylaws, MRMC has two purposes:

> (1) to aid and support the development and provision of health services in the Milwaukee region by assisting its members to develop and operate, high-quality, efficient and effective programs of education, research and patient care; (2) to facilitate the efficient development and functioning of the Medical Center Campus.

¶ 9. MRMC leases land from the County pursuant to a lease agreement dated June 12, 1990. The land is approximately 1.75 acres and is located at 8624 Water-

town Plank Road in Wauwatosa. The County holds title to the land. The land was leased to MRMC for the specific purpose of permitting MRMC to build a day care facility.

¶ 10. The lease agreement runs for 50 years, beginning June 12, 1990, and ending June 11, 2040. For the first 30 years of the lease, MRMC is to pay the County $1.00 per year in rent for the land. For the remaining 20 years, MRMC is to pay the County rent at an agreed upon market rate. If the parties cannot agree upon a market rate, the rent shall be set at 10 percent of the fair market value of the land, not including increased value due to improvements made by MRMC. If the parties cannot agree on a fair market value, the lease provides a process for determining a value.

¶ 11. The property must be used to operate a day care program that is available to employees and students of MRMC's members and affiliates, as well as the general public. The lease provides that MRMC had to construct a day care facility that could serve at least 140 children, and this was accomplished in 1991.[3] MRMC may not sublet, assign, or lease space in the completed facility without the County's prior approval.

¶ 12. The cost to construct the day care facility was to be at least $400,000. The County was required to approve all construction plans and material changes to the plans after initial approval. If the day care facility had not been "substantially complete[d]" within three years, the lease would have been null and void. During construction of the day care facility, MRMC was required to "minimize any interruption of full and com-

---

[3] If MRMC had not been able to obtain approval for the day care facility, including the necessary licenses, permits, certificates, or other consents, MRMC could have declared the lease void within 365 days of signing the lease.

plete public usage" of the roadways and to "restore all roadways to the same or similar condition as existed prior to the commencement of construction."

¶ 13. The lease provides that MRMC could finance construction of the day care facility through various means, including mortgaging its leasehold interest in the land. The lease further provides that the County would consider any modification of the lease necessary for MRMC to receive financing. Such modification included subordination of the County's fee interest in the land. MRMC financed the construction of the day care facility through tax-exempt bonds. MRMC pays the debt service on these bonds.

¶ 14. After seeking the County's approval for its construction plans, MRMC built a day care facility in accordance with the terms of the lease. The completed day care facility "is a two-story facility custom-designed for child care and includes 16 classrooms, 2 offices, kitchen, indoor play area, mechanical room, and adult and children's bathrooms. There are four fenced patios, two fenced playground areas, a garage and two parking lots with 59 surface parking stalls." The fencing was required by the lease agreement. In addition, the lease permitted MRMC to affix signs on the exterior of the day care facility and on the land in accordance with size and design requirements and with prior written consent of the County's Director of Health and Human Services. The lease also required MRMC to obtain permission before constructing a parking lot.

¶ 15. Title to the day care facility is with MRMC until the expiration or termination of the lease. Upon expiration or termination, MRMC may remove any fixtures, equipment, or displays it installed or any other personal property. Title to all remaining personal property, fixtures, equipment, displays, along with the title

60

to the day care facility will vest with the County. However, should MRMC make, with prior written consent of the County, any "substantial capital expenditures" in the ten years prior to the termination of the lease, the County must reimburse MRMC for the expenditures.

¶ 16. The lease also contains post-construction requirements for MRMC. MRMC is required to pay the County for water and sewage services and to purchase electricity from the County; however, the electricity provision was made optional through an amendment. MRMC must provide premises security for the interior of the day care facility and must pay the County pro rata for exterior security of common areas. Furthermore, MRMC is required to obtain hazard insurance for up to 80 percent of the insurable value of the day care facility naming the County as a co-insured. MRMC is also required to obtain public liability insurance naming the County as an additional insured. MRMC must maintain and repair the property. The County entered into an agreement with the City that made the County responsible for part of the construction costs of a fire station in the vicinity as well as the cost of 15 additional fire fighting positions; the lease requires MRMC to pay its pro rata share of these costs.

¶ 17. The County retained certain rights over the property. The County must approve all additional projects costing over $50,000 and all alterations, additions, or improvements to the day care facility. The County retains the right, after providing MRMC prior written notice, to "enter into and upon the Premises at reasonable times for the purpose of examining and inspecting whether [MRMC] has or is performing [the] covenants set forth in this Lease." Additionally, the County retains the right to inspect its utility lines at any time without notice.

¶ 18. If the property is condemned in whole or in part during the term of the lease, such that in MRMC's "sole opinion" the property is unsuitable for the continuation of the day care facility, the lease shall terminate. The County is entitled to any condemnation award attributed to the value of the land, county-owned utility lines, or utility tunnel; MRMC is entitled to the balance. If MRMC deems the property still suitable for the operation of the day care facility, MRMC is required to use the condemnation award, exclusive of the portion of the award attributable to the partial taking of the County's underground utility facilities, to restore the property to its state before the taking, and the lease shall continue.[4] Any remaining condemnation award is to be split between the County and MRMC, with the County receiving funds attributable to the land and the MRMC receiving the balance.

¶ 19. If the day care facility is damaged by fire or other casualty, MRMC has the right to terminate the lease within six months of the event if, at its "sole discretion," the day care facility is no longer usable. If MRMC terminates the lease, MRMC must, at the County's written request, "demolish and remove the [day care facility] from the [land] and restore the real estate comprising of the [land] to the extent possible to the condition at the commencement of construction of the [day care f]acility." In addition, if MRMC terminates the lease, the County no longer has a claim to insurance proceeds from the casualty, "except to the extent of damage or destruction of [the County's] underground utility facilities." However, if MRMC does not terminate

---

[4] MRMC is not required to follow the original plan, provided that the quality of the day care facility remains the same.

the lease, the insurance proceeds must be used to restore the day care facility, including the County's underground utilities.

¶ 20. In accordance with the lease, MRMC uses the day care facility as a child day care program that serves the employees and students of MRMC's members and affiliates and the general public. This child day care program is called Campus Child Care. Beginning in 1998 MRMC contracted with Childtime Children's Centers, Inc. (Childtime) for the management and operation of Campus Child Care. Childtime is a wholly-owned subsidiary of Childtime Learning Centers, Inc., a for-profit Michigan corporation. Childtime is not a related organization of MRMC and does not lease or hold any interest in the property. From 2001 through 2003, MRMC paid Childtime a flat fee ranging between $48,000 and $60,000.

¶ 21. Campus Child Care is open to the general public, and no preference is offered to MRMC employees or students. However, from 2001 through 2003 over half of all children enrolled had parents who were affiliated with MRMC or Childtime. All parents are charged the same fee for child care services, based upon a fixed fee schedule, regardless of their affiliation with MRMC.

¶ 22. Campus Child Care offers a curriculum that is tailored to children of varying ages. Different programs are offered for children ranging from infants through school age. All programs have educational components. Campus Child Care is accredited by the National Association for the Education of Young Children, which evaluates programs based upon educational interaction between teachers and children and

reviews Campus Child Care's curriculum. Many of the Childtime instructors were taught or certified in childhood education.

## PROCEDURAL BACKGROUND

¶ 23. In 2003 MRMC timely filed a State of Wisconsin Property Tax Exemption Request with the Wauwatosa City Assessor's office pursuant to Wis. Stat. § 70.11. From 1990 through 2002, the City treated the property as exempt from property tax. However, on or about July 14, 2003, the City Assessor denied MRMC's property tax exemption request, and on October 30, 2003, the City invoiced MRMC for property taxes from 2001 and 2002. The taxes assessed were $31,920.56 for 2001 and $38,384.84 for 2002, based upon assessed property values of $1,013,800 and $1,634,300, respectively. In December 2003 the City invoiced MRMC for a 2003 property tax of $40,271.26, based upon an assessed value of $1,634,300.

¶ 24. MRMC timely paid the property taxes for all three years, totaling $110,576.66. It did so under protest, and it timely filed a claim with the City to recover the property taxes for all three years on grounds that the property was tax-exempt. On April 7, 2004, the City disallowed MRMC's claim for refund, and MRMC timely filed this action in circuit court, pursuant to Wis. Stat. § 74.35(3)(d).[5] MRMC claimed that the property is exempt from property tax under one of two provisions:

---

[5] Wisconsin Stat. § 74.35(3)(d) provides, "If the taxation district disallows the claim, the claimant may commence an action in circuit court to recover the amount of the claim not allowed. The action shall be commenced within 90 days after the claimant receives notice by certified or registered mail that the claim is disallowed." Wis. Stat. § 74.35(3)(d).

(1) under Wis. Stat. § 70.11(2) because the land is owned by the County; or (2) under § 70.11(4) because MRMC is an educational association.

¶ 25. MRMC and the City both moved for summary judgment. The circuit court granted MRMC's motion, holding that the property was exempt from property tax under Wis. Stat. § 70.11(2) and directing the City to refund MRMC's property taxes for three years on the property. The circuit court also concluded that the property was not tax-exempt under § 70.11(4), though this conclusion was not dispositive. The City appealed the holding that the property was tax-exempt under § 70.11(2), and MRMC cross-appealed the conclusion that the property was not tax-exempt under § 70.11(4).

¶ 26. The court of appeals reversed. The court of appeals synthesized the case law to form a two-part test to determine the beneficial ownership of property leased from a tax-exempt entity like a county. The court's test was that "the tax-exempt entity is the beneficial owner of the property if it: (1) gets not-inconsequential benefits from the property, and (2) has substantial control focused on preserving or enhancing those benefits." *Milwaukee Reg'l Med. Ctr.*, 295 Wis. 2d 211, ¶ 29. "Where both aspects are present . . . the property is exempt from taxation." *Id.*

¶ 27. The court of appeals concluded that the County was not the beneficial owner of the property because (1) the County did not receive a sufficient, immediate benefit from the property; and (2) the County did not have sufficient day-to-day oversight of the property to exercise control over the property. *Id.*, ¶¶ 29, 32. Therefore, MRMC was the beneficial owner and the property was not tax-exempt under Wis. Stat.

§ 70.11(2). *Id.* Judge Ted Wedemeyer dissented from this determination.

¶ 28. The court of appeals affirmed the circuit court's conclusion that MRMC was not exempt from property tax under Wis. Stat. § 70.11(4). The court held that MRMC was not an educational association because it is not "substantially and primarily devoted to educational purposes." *Id.*, ¶ 34. Thus, the tax exemption under § 70.11(4) did not apply, and the property was not exempt from property taxes for 2001, 2002, and 2003. *Id.*, ¶ 36.

¶ 29. MRMC filed a petition for review asking this court to review whether the property was exempt from taxation under either Wis. Stat. § 70.11(2) or (4). We granted review.

### STANDARD OF REVIEW

¶ 30. This case requires the court to interpret and apply Wis. Stat. § 70.11(2) and (4). Construction of a tax exemption statute under a particular set of facts presents a question of law that is reviewed without deference to the trial court. *St. Elizabeth Hosp., Inc. v. City of Appleton,* 141 Wis. 2d 787, 790–91, 416 N.W.2d 620 (Ct. App. 1987).

¶ 31. The party claiming exemption from taxation bears the burden of showing that property is exempt. *Id.* at 791. All exemptions are strictly construed with a presumption of taxation. Wis. Stat. § 70.109.[6] However,

---

[6] Wisconsin Stat. § 70.109 states: "Exemptions under this chapter shall be strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption." Wis. Stat. § 70.109.

while an exemption should be strictly construed, the construction must still be reasonable. *Trustees of Ind. Univ. v. Town of Rhine,* 170 Wis. 2d 293, 299, 488 N.W.2d 128 (Ct. App. 1992).

## DISCUSSION

A. Municipal Property Exemption under Wis. Stat. § 70.11(2)

1. Legal Background

¶ 32. Wisconsin Stat. § 70.11(2) exempts "[p]roperty owned by any county" from general property taxes.[7] Furthermore, "[l]easing the property exempt under this subsection, regardless of the lessee and the use of the leasehold income, does not render that property taxable." *Id.*

---

[7] Wisconsin Stat. § 70.11 provides the following:

> The property described in this section is exempted from general property taxes if the property is exempt under sub. (1), (2), (18), (21), (27) or (30); if it was exempt for the previous year and its use, occupancy or ownership did not change in a way that makes it taxable; if the property was taxable for the previous year, the use, occupancy or ownership of the property changed in a way that makes it exempt and its owner, on or before March 1, files with the assessor of the taxation district where the property is located a form that the department of revenue prescribes or if the property did not exist in the previous year and its owner, on or before March 1, files with the assessor of the taxation district where the property is located a form that the department of revenue prescribes. Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property or construction debt retirement of the leased property, or both, and, except for residential housing, if the lessee would be exempt from taxation under this chapter if it owned the property. Any lessor who claims that leased property is exempt from taxation under this chapter shall, upon request by the tax assessor, provide

■■■

¶ 33. The parties do not dispute that the County retains legal title to the land. However, retaining legal title to the land does not guarantee that the County or an equivalent municipality will remain the "owner" of property for tax exemption purposes, *City of Franklin v. Crystal Ridge, Inc.,* 180 Wis. 2d 561, 568, 509 N.W.2d 730 (1994), because "taxation or exemption depends not upon the legal title but on the status of the owner of the beneficial interest in the property." *State ex rel. Wis. Univ. Bldg. Corp. v. Bareis,* 257 Wis. 497, 505, 44 N.W.2d 259 (1950). Thus, the word "owned" in Wis. Stat. § 70.11(2) means "beneficial ownership, not mere technical title." *Mitchell Aero, Inc. v. City of Milwaukee,* 42 Wis. 2d 656, 660, 168 N.W.2d 183 (1969); *see also Am. Motors Corp. v. City of Kenosha,* 274 Wis. 315, 80 N.W.2d 363 (1957).

¶ 34. The *Mitchell Aero* court reasoned as follows:

> [T]he ownership of property by a municipality to qualify for exemption under sec. 70.11(2), Stats., means real or true ownership and not paper title only. Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each

records relating to the lessor's use of the income from the leased property. Property exempted from general property taxes is:

. . . .

(2) Municipal property and property of certain districts, exception. *Property owned by any county* . . . . Leasing the property exempt under this subsection, regardless of the lessee and the use of the leasehold income, does not render that property taxable.

Wis. Stat. § 70.11(2) (emphasis added).

> case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership.

*Mitchell Aero,* 42 Wis. 2d at 662. Applying this principle, it is evident that a municipality may transfer enough "sticks" from its bundle that it is no longer the beneficial owner of property. On the other hand, it may retain enough "sticks" to retain beneficial ownership, even though it has leased its property. *See, e.g., Gebhardt v. City of West Allis,* 89 Wis. 2d 103, 106, 278 N.W.2d 465 (1979).

█

¶ 35. To determine whether MRMC or the County is the beneficial owner, we look at the totality of the facts and circumstances surrounding the case. *Id.* at 109. We analyze the rights and benefits of each party that are usually associated with ownership, *id.,* and weigh the County's indicia of ownership against MRMC's indicia of ownership, *Crystal Ridge,* 180 Wis. 2d at 568; *Mitchell Aero,* 42 Wis. 2d at 665.[8] We keep in mind that not all "sticks" have the same weight.

---

[8] The court of appeals applied a two-part test to determine if the municipality was the beneficial owner under Wis. Stat. § 70.11(2). *Milwaukee Reg'l Med. Ctr., Inc. v. City of Wauwatosa,* 2006 WI App 139, ¶ 29, 295 Wis. 2d 211, 720 N.W.2d 161. The test stated that "the tax-exempt entity is the beneficial owner of the property if it: (1) gets not-inconsequential benefits from the property, and (2) has substantial control focused on preserving or enhancing those benefits." *Id.*

While such a test may be a useful analysis of prior case law, it has the potential of narrowing the inquiry to exclude or minimize certain factors that may be relevant but do not fall squarely within the benefits and control factors. We interpret previous cases as requiring a totality of the circumstances test in which the court evaluates all the facts and circumstances

¶ 36. We do not understand either party to seek a modification of existing principles on beneficial ownership. Thus, our task is to apply existing principles to a particular set of facts. Because this court has previously made rulings in three major cases determining beneficial ownership, we turn to those cases for legal precedent.

a. *Mitchell Aero, Inc. v. City of Milwaukee*

¶ 37. In *Mitchell Aero,* we held that Mitchell Aero was the beneficial owner of property it leased from Milwaukee County and was thus not tax-exempt. *Mitchell Aero,* 42 Wis. 2d at 665. Mitchell Aero operated a "noncommercial aviation business" out of General Mitchell Field.[9] It leased part of the airport grounds from Milwaukee County. *Id.* at 658. The lease extended for 20 years with an option to renew for five years. *Id.* at 663.

¶ 38. Mitchell Aero paid rent to Milwaukee County for the land and attached buildings it had leased. *Id.* However, at that time it did not pay rent for two hangars that Mitchell Aero built with permission on leased land,[10] even though, upon completion of construction, legal title to the two hangars vested in Milwaukee County. *Id.* Furthermore, any alterations to the hangars required prior approval by Milwaukee County and would not be made at Milwaukee County's expense. *Id.*

---

surrounding the case. We will continue to apply a totality of the circumstances test.

[9] General Mitchell Field is now General Mitchell International Airport.

[10] In the event that Mitchell Aero exercised its 5–year option, Mitchell Aero was required to pay rent based on square footage for one of the two hangars. *Mitchell Aero, Inc. v. City of Milwaukee,* 42 Wis. 2d 656, 663, 168 N.W.2d 183 (1969).

¶ 39. Mitchell Aero was responsible for maintaining the hangars, though Milwaukee County remained responsible for the maintenance of all other structures on the land. *Id.* Mitchell Aero had to acquire fire and extended insurance coverage for one of the hangars to the extent of 80 percent of the insurable value, and it was required to use all insurance proceeds to "immediate[ly] repair any damage to the hangar." *Id.* at 664. The lease provided that if Milwaukee County condemned the land, abandoned the land as an air terminal, or breached the lease, Milwaukee County was required to pay Mitchell Aero an amount equal to Mitchell Aero's "unamortized investment" in the hangars. *Id.* If the land was condemned by either the state or federal government, Mitchell Aero's only recourse was against the condemning government. *Id.*

¶ 40. This court concluded that, under the terms of the lease, some of the rights usually associated with ownership were in Mitchell Aero and others were in Milwaukee County. *Id.* at 665. However, Milwaukee County's control over the hangars was "not indicative of true ownership but concern[ed] the operation of the airport." *Id.* In other words, the county's control over the hangars concerned its broad oversight of the airport's operation and did not impede Mitchell Aero's ability to use the hangars in its business, to the exclusion of the county, for the lease term. This court concluded that Mitchell Aero's arrangement with Milwaukee County did "not pass sufficient incidents of ownership with the paper title to constitute the county the true owner of the hangars within the meaning of 'owned' in sec. 70.11(2), Stats." *Id.* We therefore held Mitchell Aero to be the beneficial owner of the hangars and subject to taxation. *Id.*

### b. *Gebhardt v. City of West Allis*

¶ 41. In *Gebhardt,* the State of Wisconsin leased property to Richard Gebhardt and William Sommer (collectively, Gebhardt) for 10 years with an option to renew for 10 years. *Gebhardt,* 89 Wis. 2d at 104. The property included an ice skating arena at the Wisconsin State Fair Park that Gebhardt was required to build pursuant to the lease. *Id.* at 104. The City of West Allis asserted that Gebhardt was the owner of the ice skating arena, while Gebhardt asserted the state was the owner for Wis. Stat. § 70.11(1)[11] property tax exemption purposes. *Id.* at 105. This court sided with Gebhardt. *Id.* at 114–15.

¶ 42. In our analysis, we observed that Gebhardt possessed the following indicia of ownership as articulated in the lease:

> (1) the building was constructed at [Gebhardt's] sole expense; (2) [Gebhardt] enjoyed the use and benefits of the ice arena for ten months out of every year; (3) the lease require[d Gebhardt] to maintain and keep the premises in proper repair; (4) [Gebhardt was] required to carry full fire and extended coverage on the building and its contents and (5) under the terms of the lease [Gebhardt bore] the risk of loss should the ice arena be destroyed during the lease period.

*Id.* at 109.

¶ 43. In concluding that Gebhardt was not the beneficial owner, we noted that the benefits Gebhardt received from the property were distinctly different from the benefits Mitchell Aero received. *Id.* Significantly, unlike Mitchell Aero, Gebhardt was required to

---

[11] Wisconsin Stat. § 70.11(1) provides a property tax exemption for state-owned property that is similar to the § 70.11(2) tax exemption for property owned by a municipality.

pay rent "based upon the number of years since the commencement of the lease and a percentage of the gross receipts from the operation of the [ice arena]." *Id.* at 110. Also significant was the fact that, unlike Mitchell Aero's 80 percent insurable interest in the property, Gebhardt had an insurable interest in the property that diminished as the state came closer to acquiring a full and complete possessory interest in the property when the lease expired. *Id.* at 113.

¶ 44. In addition, the state exercised significant control over the ice arena that interfered with Gebhardt's business operation. The state's control included: (1) selection of the location for the ice arena and prior approval of the plans; (2) ownership of structural improvements if the lease was terminated because the ice arena was not completed by a specific day; (3) limitations on Gebhardt's use of the ice arena to "ice skating related sports and recreation;" (4) exclusive right to use the arena for two months every year without charge; (5) requirement that improvements be made to the completed structure at Gebhardt's expense for the benefit of the state; (6) sole operation of the only concession stand and prohibition of the operation of a competitive concession stand; (7) keys to all doors and the ability to enter the ice arena at any time; (8) requirement that Gebhardt post hours and fees, and cater to special groups in the neighborhood; (9) prohibition on ice arena customers entering State Fair Park during certain special events; (10) prohibition on selling, conveying, letting, or subletting any portion of the ice arena without prior consent; and (11) requirement that Gebhardt repair any damage to the building caused by removal of personal property after the termination of the lease. *Id.* at 110–112.

73

¶ 45. In light of the above factors, we held that the "ownership of the ice arena rested in the state and that the indicia of ownership attributed to [Gebhardt were] not persuasive to the court to constitute true and beneficial ownership pursuant to ch. 70." *Id.* at 114–15.

### c. *City of Franklin v. Crystal Ridge, Inc.*

¶ 46. Finally, in *Crystal Ridge,* we held that Milwaukee County was the owner of a ski chalet and a rental building that it leased to Midwest Development Corporation[12] as part of a plan to construct and operate "a down hill facility with restaurant/chalet and parking lot and other sports activities for all seasons." *Crystal Ridge,* 180 Wis. 2d at 564. The lease was for 10 years with three 5–year renewal options. *Id.* Midwest built a ski hill along with buildings and other improvements to the land, as required by the lease, and it paid Milwaukee County rent of the greater of three percent of gross profits or $10,000 per year. *Id.* at 564–65. Midwest used landfill material dumped at the site to construct the ski hill. *Id.* at 565. The lease required that Milwaukee County and Midwest share the revenue from the dumping fees to improve the facility. *Id.* Between the dumping fees and rent, Milwaukee County earned $744,569 for a 5–year period, whereas Midwest operated the ski hill at a loss of $83,694 for the same 5–year period. *Id.*

¶ 47. We noted the following indicia of Midwest's ownership in the buildings:

[12] Crystal Ridge Ski Hill is the name of the downhill facility. *City of Franklin v. Crystal Ridge, Inc.,* 180 Wis. 2d 561, 565, 509 N.W.2d 730 (1994). Midwest Development Corp. built the ski hill and remained the lessee. *Id.* at 656–66. However, Crystal Ridge, Inc. physically occupied and managed the ski hill. *Id.* at 563, 566.

(1) Midwest constructed the buildings at its own expense; (2) Midwest and Crystal Ridge enjoy the use and profits from the ski facility for three and one-half months each year; (3) Midwest carries fire and liability insurance on the buildings; (4) Midwest is responsible for repairs and maintenance on the buildings; and (5) Midwest agreed to pay all licenses, fees and taxes on the property.

*Id.* at 568–69.

¶ 48. In holding that Midwest was not the beneficial owner, we recognized that Midwest's indicia of ownership deviated from Mitchell Aero's indicia of ownership in three important ways. Midwest paid Milwaukee County rent, whereas Mitchell Aero did not. *Id.* at 569. Milwaukee County exercised significant control over the daily operation of the Crystal Ridge buildings, including "activities, fees, restaurant menu and hours of operation of the buildings," whereas Milwaukee County did not exercise control over the daily operation of Mitchell Aero's hangars. *Id.* Finally, Milwaukee County was required to pay Midwest for the buildings only if it terminated the lease and did not use the premises as a ski hill. By contrast, there were several circumstances in which Milwaukee County would be required to pay Mitchell Aero for the hangars, such as if the county condemned the leased land, the county abandoned the land as an air terminal, or the county breached a provision in the lease. *Id.*

¶ 49. We then noted that Milwaukee County had many indicia of ownership in the buildings. These included:

(1) [Milwaukee County] must approve the plans and location of the buildings; (2) [Midwest] can only use the land for one purpose . . . skiing . . . unless [Milwaukee County] gives permission to conduct other activities on

the land; (3) [Milwaukee County] enjoys exclusive use of the land for other purposes for a significant length of time each year; (4) [Milwaukee County] may enter and leave the buildings at any reasonable time; (5) [Midwest] may not sublet the buildings or any portion of the buildings without [Milwaukee County's] prior approval; (6) [Midwest] must maintain insurance on the buildings naming [Milwaukee County] as an additional insured; and (7) upon expiration of the lease, [Milwaukee County] acquires a full possessory interest in the buildings.

*Id.* at 570.

¶ 50. We described two additional factors that indicated Milwaukee County was the beneficial owner of the buildings. Financial institutions did not recognize Midwest as the owner, and Milwaukee County received the majority of the profits from the ski hill. *Id.* at 571.

¶ 51. After balancing the county's indicia of ownership against Midwest's indicia of ownership, we held that the county was the beneficial owner of the ski chalet and the rental building. *Id.*

2. Application to MRMC

¶ 52. We now apply the analyses of *Mitchell Aero, Gebhardt,* and *Crystal Ridge* to the present case. MRMC argues that Milwaukee County, in addition to retaining title to the land, retains sufficient control over the property to be considered the owner. MRMC argues that this control manifests itself through approval requirements, lease restrictions, and entry privileges. Furthermore, the County receives present financial benefits under the terms of the lease and will receive significant rent for the last 20 years of the lease. Moreover, the County will receive title to the day care

facility at the end of the lease. MRMC also contends that the County receives non-financial benefits by having the day care facility in the community.

¶ 53. On the other hand, the City argues that MRMC has not presented sufficient evidence to overcome the presumption of taxation. The City claims that the County receives only inconsequential or future benefits from the property. Furthermore, the County does not retain control over the property because it has no say in the operation of the property.

¶ 54. We agree with the City that MRMC is the beneficial owner of the property at the present time, and thus the property is not tax-exempt under Wis. Stat. § 70.11(2). The totality of the circumstances weighs toward MRMC as the beneficial owner.

¶ 55. We recognize that the County has numerous indicia of ownership.[13] These indicia include the following: (1) the County has title to the land; (2) if construction of the day care facility had not been substantially completed on time, the lease would have been null and void; (3) the County must give its approval for MRMC to use the day care facility for any purpose other than to operate a day care program; (4) the County controls whether MRMC may lease, sublet, or assign the day care facility or space within the facility; (5) the County must approve all building construction plans and material changes after such approval; (6) the County must approve all alterations, additions, improvements, and projects over $50,000; (7) the County has the right to enter the premises; (8) the County must consent before MRMC may construct a parking lot; (9) the County is paid by MRMC for exterior security of the property,

---

[13] In recognizing these indicia of ownership, we benefit from the circuit court's analysis.

sewage service, and water; (10) the County must give permission to MRMC before MRMC makes substantial expenditures during the last 10 years of the lease; (11) the County is paid by MRMC for MRMC's prorated share of fire station expenses; (12) the County receives title to the day care facility at no cost upon termination of the lease; (13) the County is a co-insured on the hazard insurance and an additional insured on the public liability insurance; and (14) if there is a condemnation that leaves the property unusable as a day care facility, the County receives the portion of the condemnation award attributable to the land, utilities, and utility tunnels.

¶ 56. On the other side of the scale, MRMC's indicia of ownership include: (1) MRMC has a 50–year lease; (2) MRMC has exclusive occupancy of the property during the life of the lease; (3) MRMC pays only $1.00 per year in rent to the County for 30 years; (4) MRMC does not pay the County any revenues from its day care activities on the property; (5) MRMC has control over the operation of the day care facility—the County does not set the prices or hours of operation; (6) MRMC must be provided with written notice before the County may enter the property, except when the County enters the property to inspect its utility lines; (7) MRMC can mortgage its leasehold interest in the land; (8) MRMC constructed the day care facility at its own expense; (9) MRMC pays the debt on the bonds issued to build the day care facility; (10) MRMC retains title to the day care facility until the expiration or termination of the lease; (11) MRMC has hazard and public liability insurance on the property; (12) MRMC maintains the day care facility and performs repairs; (13) MRMC provides security for the interior of the day care facility; (14) MRMC will be reimbursed by the

County for any "substantial capital expenditures" it undertakes if those expenditures are made during the ten years prior to the termination of the lease; (15) upon condemnation of the property, MRMC shall "at its sole discretion" determine if the property is suitable to continue operation of the day care facility, and if the property is condemned so that it is not usable as a day care facility, MRMC receives that part of the condemnation award attributable to the day care facility.

¶ 57. Several of the MRMC factors deserve discussion and emphasis. First, a 50–year lease is a relatively long lease. It permits MRMC to engage in long-term planning for the child care needs of employees and students in its member institutions. In December 2003 the day care facility had 76 more children than the 140 mentioned in the 1990 lease, suggesting that MRMC has been able to expand use of the facility.

¶ 58. Second, although a lessee's occupancy of leased property is expected and not dispositive, MRMC is nonetheless entitled to exercise exclusive occupancy of this property for a half century. Its exclusive occupancy of the property contrasts with the nonexclusive occupancy of the properties in *Gebhardt* and *Crystal Ridge.*

¶ 59. Third, legal title to the day care facility is presently vested in MRMC. This makes the most valuable part of the property distinguishable from the property at issue in *Mitchell Aero* where title to the hangars was vested in Milwaukee County. *See Mitchell Aero,* 42 Wis. 2d at 663.

¶ 60. Fourth, at present, MRMC does not really pay rent for the land, as $1.00 per year is a token payment. As MRMC notes, this factor will change markedly in the future. As a consequence, MRMC receives the primary financial benefit from the property

at the present time. The only other financial benefits the County receives from MRMC are payments for water, sewage service, a prorated share of security for the exterior of the day care facility, and a prorated share of fire station expenses. As in *Mitchell Aero,* where the County received no rent for the two hangars, the County in this case does not receive a portion of Campus Day Care's profits. *See Mitchell Aero,* 42 Wis. 2d at 663.

¶ 61. In both *Gebhardt* and *Crystal Ridge,* on the other hand, the government agency received a significant present financial benefit. In *Gebhardt,* the state received significant rent under the terms of the lease. *Gebhardt,* 89 Wis. 2d at 110–11. In *Crystal Ridge,* Midwest paid Milwaukee County rent of the greater of three percent of gross profits or $10,000. *Crystal Ridge,* 180 Wis. 2d at 564–65. Milwaukee County also shared the revenues for the dumping fees for landfill material. Thus, the court noted that between the dumping fees and rent, Milwaukee County earned $744,569 for the 5–year period. *Id.* at 565. Here, while the County received $1.00 in rent for each year from 2001 through 2003, Campus Day Care generated revenue of $1,051,014 in 2001, $1,218,942 in 2002, and $1,374,689 in 2003 for MRMC.

¶ 62. Fifth, Milwaukee County is not involved in the daily operation of Campus Day Care. In other words, the County not only does not occupy the property, but also does not really control the property. Most of the County's present "controls" come into play only if MRMC wishes to change the facility's mission, change the facility's occupants, or change the facility itself. Periodic inspections and control of building construction and building signage are typical of government oversight, irrespective of ownership. The County may

not access the day care facility without prior written notice. Hence, this case stands in sharp contrast to *Gebhardt* and *Crystal Ridge* in terms of government control of operations.

¶ 63. In *Gebhardt* the State owned and operated the only concession stand at the ice skating arena, required the ice arena to cater to special neighborhood groups, had keys to the arena, could enter the arena at any time, and had sole control over the arena for two months of the year. *Gebhardt*, 89 Wis. 2d at 111–12. In *Crystal Ridge* the county specified the accounting method Midwest had to use; the cash management equipment Midwest had to use; and the cost of all lift tickets, food, ski rentals, or other items sold or rented on the premises. *Crystal Ridge,* 180 Wis. 2d at 566.

¶ 64. Considering the totality of the circumstances, we conclude that MRMC is at present the beneficial owner of the property. The County presently holds title to the land, for which it is paid rent of only $1.00 per year, but MRMC presently holds legal title to the day care facility. Thus, the present financial benefit weighs heavily for MRMC. The County's present control of the property also is not significant. Therefore, the property does not qualify for a Wis. Stat. § 70.11(2) tax exemption.

¶ 65. Two additional comments on this score appear necessary. One, under the lease, MRMC is required to pay the County a portion of the County's costs for the construction of a city fire station and additional firefighting positions. For the years at issue, 2001–2003, these payments amounted to $6,645.30. In essence, these payments serve as payments partially in lieu of taxes. Inasmuch as we conclude that MRMC is not exempt from property taxes, MRMC will be paying full

81

property taxes to Milwaukee County as well as to the City. Continuation of the fire station payments on top of property taxes to the County may constitute an issue that MRMC and the County should address.

¶ 66. Two, of necessity, we consider the totality of the circumstances for tax years 2001, 2002, and 2003. Wisconsin Stat. § 70.10 requires the assessor to assess all real and personal property "as of the close of January 1 of each year." If the terms of the lease or other circumstances (such as use of the property) change significantly, beneficial ownership may change as well. In this case, the effect of the lease is markedly different after 30 years. After 30 years, MRMC will pay a fair market value rent to the County on the land. This change in lease terms *may* alter the property's tax status. This case is quite different from *Gebhardt* where the parties agreed that the court's determination would govern the tax assessment on the ice arena "for the year 1974 and *all future years in which the property is subject to the lease agreement.*" *Gebhardt,* 89 Wis. 2d at 105 (emphasis added). The holding in this case does not prevent a reassessment of MRMC's tax status if there is a *significant* change in the totality of the circumstances.[14]

B. Educational Association Exemption under Wis. Stat. § 70.11(4)

¶ 67. MRMC presents a second ground for property tax exemption. If MRMC is deemed the beneficial

---

[14] Our purpose in making this observation is not to introduce uncertainty into property taxation. Our purpose is merely to recognize that property is not static. Over time, the beneficial ownership of property may change if enough "sticks" or rights move from one party to another.

owner of the property, then, it argues, it qualifies as an educational association under Wis. Stat. § 70.11(4).

¶ 68. Wisconsin Stat. § 70.11(4) authorizes a property tax exemption for "[p]roperty owned and used exclusively by educational institutions offering regular courses 6 months in the year" and for property owned by "educational or benevolent associations."[15]

¶ 69. In *Janesville Community Day Care Center, Inc. v. Spoden,* 126 Wis. 2d 231, 235, 376 N.W.2d 78 (Ct. App. 1985), the court of appeals ruled on a tax exemption dispute involving a day care facility in a renovated former school in Janesville. In approving the facility's tax exemption, the court employed a five-part statutory test articulated in *National Foundation of Health, Welfare & Pension Plans, Inc. v. City of Brookfield,* 65 Wis. 2d 263, 264–65, 222 N.W.2d 608 (1974). The court said that to qualify for a property tax exemption under Wis. Stat. § 70.11(4), a property owner must pass the following five-part test: (1) the property owner must be an educational association; (2) the property at issue must be owned and used exclusively for the purposes of the association; (3) the property must be less than ten acres; (4) the property must be necessary for location and convenience of the buildings; and (5) the property must not be used for profit. *Janesville Cmty. Day Care,* 126 Wis. 2d at 235.

¶ 70. To qualify as an educational association under Wis. Stat. § 70.11(4), MRMC must pass a two-part test. First, the organization must be a nonprofit

---

[15] Because MRMC asserts that it is exempt only as an educational association, not as an educational institution, we apply only those tests appropriate to the "educational association" status.

organization substantially and primarily devoted to educational purposes. *Nat'l Found.,* 65 Wis. 2d at 264–65. If the educational function is merely incidental to nonexempt functions or the educational function serves the directors' or the members' personal interests, the exemption will not be granted. *Id.* at 265–66. Second, the organization must be devoted to "traditional" educational activities. *Id.* at 266; *see Eng'rs & Scientists of Milwaukee, Inc. v. City of Milwaukee,* 38 Wis. 2d 550, 558, 157 N.W.2d 572 (1968).

¶ 71. The City does not challenge whether MRMC is devoted to traditional educational activities. The City argues that MRMC is not substantially and primarily devoted to educational purposes. We agree with the City. Therefore, we do not address whether MRMC is devoted to traditional educational activities.

¶ 72. On the first prong of the two-part test, the parties disagree whether the focus of this inquiry should be on MRMC's activities as a whole or on MRMC's activities at the day care facility. MRMC argues that the focus should be on whether its activities at the day care facility, rather than its activities as a whole, are substantially and primarily devoted to educational purposes.

¶ 73. Because MRMC is the taxable entity, we must consider the entirety of MRMC's activities, not just its activities at the day care facility. We agree with the City that under the five-part statutory test, both the organization (MRMC) and the property (day care facility) must qualify for exemption under Wis. Stat. § 70.11(4). Hence, (1) the organization must qualify as an educational association; and (2) the property of the organization must be owned and used exclusively for the purposes of the association. *Janesville Cmty. Day*

*Care,* 126 Wis. 2d at 235. If only the organization's activities at the property were relevant in determining whether an organization is an educational association, the second part of the statutory test would become superfluous because the use of the property would already be determined.

¶ 74. This interpretation is supported by case law. In *Trustees of Indiana University,* the issue was whether an Indiana University alumni organization that ran a summer camp in Wisconsin used by the university for physical education curriculum, was an educational association. The court not only considered the organization's activities at the camp, but also considered its activities at the campus in Indiana. *See Trustees of Ind. Univ.,* 170 Wis. 2d at 304.[16]

¶ 75. Thus, the issue is whether MRMC as a whole is substantially and primarily devoted to educational purposes. MRMC's primary purposes as stated in its bylaws are:

> (1) to aid and support the development and provision of health services in the Milwaukee region by assisting its members to develop and operate, high-

---

[16] MRMC relies on *Engineers & Scientists of Milwaukee, Inc. v. City of Milwaukee,* 38 Wis. 2d 550, 157 N.W.2d 572 (1968), to argue that the court in that case looked solely at the organization's primary activities at the property to determine whether the organization was an educational association. MRMC's reliance on that case is misplaced because the court there meshed the first and second statutory tests together and focused on whether the organization was an educational association whose property was owned and used exclusively as an educational association. Under the statutory test, however, the first inquiry is whether the organization is an educational association. If so, the second inquiry is whether the property is used exclusively for the purposes of an educational association.

quality, efficient and effective programs of education, research and patient care; (2) to facilitate the efficient development and functioning of the Medical Center Campus.

MRMC is a coordinating body for its members. Assisting its members by providing a high quality educational program for the young children of employees and students does not transform MRMC into an educational association. According to its bylaws, MRMC has many purposes; education is not singled out as being primary. Education of young children is incidental to MRMC's primary goal of "aid[ing] and support[ing] the development and provision of health services in the Milwaukee region" and "facilitat[ing] the efficient development and functioning of the Medical Center campus."

¶ 76. We note, in addition, that Campus Day Care is not MRMC's primary business activity, as it is not MRMC's primary source of revenue. MRMC engages in three business activities: air ambulance programs, operation of Campus Day Care, and leasing of a warehouse building to certain of its members. The bulk of MRMC's revenue for 2001, 2002, and 2003 did not come from Campus Day Care. In 2001 MRMC received $1,051,014 in revenue from Campus Day Care, while it received $5,484,032 from its transportation services. In 2002 and 2003 the transportation services generated far more income for MRMC than Campus Day Care. In 2002 Campus Day Care generated $1,218,942 in revenue, while the transportation services generated $6,348,561. In 2003 Campus Day Care generated $1,374,689, while transportation revenue generated $7,049,754.

¶ 77. In sum, we conclude that MRMC is not primarily devoted to educational purposes. Therefore, MRMC is not an educational association under Wis. Stat. § 70.11(4), and the property is not exempt from property tax.

## CONCLUSION

¶ 78. We affirm the court of appeals and hold that MRMC is not exempt from property tax under Wis. Stat. § 70.11(2) or (4). We hold that, under the totality of the circumstances, MRMC is the beneficial owner of the property at the present time. This case is distinguishable from *Gebhardt* where the parties agreed that the court's determination would govern the tax assessment on the ice arena for all the years that the property was subject to the lease agreement. The beneficial ownership of property may change over time if there is a significant change in the totality of the circumstances. We also hold that MRMC is not an educational association because its primary purpose is not educational. We remand this case to the circuit court for further proceedings in accordance with this holding.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 79. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). The majority concludes that the Milwaukee Regional Medical Center ("MRMC") is the beneficial owner of the day care facility located on public land owned by Milwaukee County ("County"). Majority op., ¶ 64. As a result, the majority reasons, MRMC does not qualify for a property tax exemption

under Wis. Stat § 70.11(2). Majority op., ¶¶ 5, 78. The majority also concludes that MRMC does not qualify for the § 70.11(4) tax exemption as an educational association. *Id.*[1]

¶ 80. Regarding the issue of beneficial ownership, I agree with the majority that we apply a fact-specific balancing test, under which we weigh the indicia of ownership of the County against the indicia of MRMC's ownership, considering all relevant factors pertaining to ownership. *See City of Franklin v. Crystal Ridge, Inc.,* 180 Wis. 2d 561, 568, 509 N.W.2d 730 (1994); *Gebhardt v. City of West Allis,* 89 Wis. 2d 103, 109, 278 N.W.2d 465 (1979); *Mitchell Aero, Inc. v. City of Milwaukee,* 42 Wis. 2d 656, 662, 168 N.W.2d 183 (1969). However, I write separately because I disagree with the majority opinion's application of that standard, and am troubled by the extent to which the majority opinion appears to change that standard.

¶ 81. The majority claims to apply the totality of the circumstances balancing test for establishing beneficial ownership set forth in *Crystal Ridge, Gebhardt,* and *Mitchell Aero. See* majority op., ¶¶ 35–36. However, reciting the standard and properly applying it are very different things. I conclude that the majority's application of the test for determining beneficial ownership is flawed in two basic ways. First, it fails to consider the totality of the circumstances by focusing almost entirely on current financial benefits provided in the lease agreement while ignoring those lease terms that provide significant future financial benefits. Second, the analysis is incomplete and biased in favor of MRMC ownership because it focuses narrowly on five indicia of MRMC ownership while failing to discuss in

---

[1] I agree with and join this latter conclusion.

any depth even one indicia of County ownership. Below, I address in turn these two problems in the majority's analysis, and conclude that a proper application of the test would result in a determination of County beneficial ownership.

I

¶ 82. The majority's application of the beneficial ownership test changes the focus from a consideration of all benefits provided to each party under the lease to only those benefits that are currently in effect. *Id.,* ¶ 64. This approach significantly alters the totality of the circumstances test, and is inconsistent with *Crystal Ridge, Gebhardt,* and *Mitchell Aero.*

¶ 83. The totality of the circumstances test requires taking into account the terms of the lease as a whole, not just those referring to current conditions and events. This principle was affirmed in the context of the beneficial ownership balancing test applied in *Crystal Ridge, Gebhardt,* and *Mitchell Aero,* all of which, in considering the totality of the circumstances, considered the lease as a *whole,* which the majority fails to do here.

¶ 84. In *Crystal Ridge,* this court examined all of the provisions of the lease between the parties, including among the emphasized indicia the fact that "upon expiration of the lease, the lessor acquires a full possessory interest in the buildings." *Crystal Ridge,* 180 Wis. 2d at 570. Consequently, the county was determined to be the beneficial owner in that case, based on the totality of the circumstances of the lease and the parties' relationship. *Id.* at 570–73.

¶ 85. In *Gebhardt,* this court explained that because ownership is often referred to as a "bundle of sticks," when we determine beneficial ownership, we

examine all of the relevant sticks, not just the stick of title ownership. *Gebhardt,* 89 Wis. 2d at 108–09. The *Gebhardt* court examined factors in a lease for a recreational ice arena reflecting both present and future conditions, noting, for example, that "under the terms of the lease the respondents bear the risk of loss should the ice arena be destroyed during the lease period." *Id.* at 109. In finding the State to be the beneficial owner, the *Gebhardt* court found "controlling" "the fact that upon expiration of the lease the state acquires a full and complete possessory interest in the property." *Id.* at 115.

¶ 86. The *Mitchell Aero* decision contains the following explanation of the "bundle of sticks" analysis of beneficial ownership:

> Ownership is often referred to in legal philosophy as a bundle of sticks or rights . . . . What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership.

*Mitchell Aero,* 42 Wis. 2d at 662. In *Mitchell Aero,* this court examined the entire lease over a twenty-year period in light of all relevant considerations, including provisions of the lease referencing future or hypothetical scenarios such as the parties' rights in the face of damage from natural disasters, condemnation, or property abandonment. *Id.* at 663–65.

¶ 87. In contrast with our decisions in these cases, where the court looked at the leases at issue in their entirety under the totality of circumstances test, the majority in this case confines its analysis to the terms of the lease that reflect the present conditions of the parties. The majority ignores those terms reflecting benefits that will be granted to the County in the

future, suggesting that the parties come back to court to re-litigate the tax exemption issue as those benefits come to fruition. Requiring the parties to re-litigate this issue each time a lease term comes to fruition would not only be contrary to the totality of the circumstances test, it would also be an unjust imposition on litigants and an impractical drain on the judiciary's resources.

## II

¶ 88. The majority mentions in passing, and in an incomplete manner, the numerous indicia of County ownership. The majority produces side-by-side lists of indicia of County ownership and indicia of MRMC ownership. Majority op., ¶¶ 55–56. However, its list of County ownership indicia fails to take into account all of the factors identified by the circuit court. While the majority opinion asserts that in compiling the list it "benefit[ed] from the circuit court's analysis," majority op., ¶ 55 n.13, the majority's list omits the following indicia favoring County ownership that were included in the circuit court's list: (1) the County's right to terminate the lease and take possession of the property if construction was not completed on time; (2) MRMC's duty to indemnify the County for damages; and (3) MRMC's responsibility to keep the day care center in clean condition, serving at least 140 children. *Compare Milwaukee Reg'l Med. Ctr., Inc. v. City of Wauwatosa,* 2006 WI App 139, ¶ 41, 295 Wis. 2d 211, 720 N.W.2d 161 (Wedemeyer, P.J., concurring in part, dissenting in part), *with* majority op. ¶ 55.

¶ 89. Rather than considering in depth the various indicia of beneficial ownership favoring both County ownership and MRMC ownership, the majority narrowly focuses on the following indicia favoring MRMC ownership: (1) the length of the lease term;

(2) MRMC's exclusive occupancy of the property; (3) MRMC's current retention of the title of the day care facility; (4) the current minimal rent which MRMC pays the County; and (5) the County's lack of involvement in the day-to-day operation of the facility. Majority op., ¶¶ 57–62.

¶ 90. The majority fails to adequately explain the basis for its emphasis on these five factors. The first two factors that the majority claims have significant weight in the balancing test—the length of the lease and MRMC's exclusive occupancy—are common lease terms and are therefore merely indicative of lessee status and are not particularly weighty indicia of ownership. The majority itself concedes that exclusive possession is to be expected with a lease agreement, but nonetheless proceeds to place great emphasis on this factor. *See* majority op., ¶ 58.

¶ 91. The third indicia highlighted by the majority, current retention of title by MRMC, should bear no more weight than the undisputed fact that the County will ultimately retain legal title to the land. As the majority concedes, possession of legal title does not guarantee that a party is an "owner" for tax exemption purposes; rather, the whole purpose of the "beneficial owner" inquiry is to move beyond such original surface determinations based on mere technical title. *See* majority op., ¶ 33. Consequently, it is difficult to fathom why the MRMC's (temporarily) retained paper title should bear more weight in our analysis than any of the indicia of County ownership.

¶ 92. The final two indicia emphasized by the majority warrant more discussion.

¶ 93. I respectfully disagree with the majority's view that because the County (unlike the governmental units in *Gebhardt* and *Crystal Ridge*) is not directly

involved in the day-to-day operation of the facility, it does not retain significant control over the use of the child-care facility. While the County does not set the price of child care or employ County employees to operate the center, there are many significant respects in which the County retains control over the center. Foremost, the County strictly limits MRMC's use of the property to "a child care center to serve employees and students of the Milwaukee Regional Medical Center, its member organizations and the general public and for no other purpose . . . ." This language is similar to the lease requirement in *Gebhardt* limiting the respondent's use of the facility to "ice skating related sports and recreation." *See Gebhardt,* 89 Wis. 2d at 111. Additionally, the County mandates that MRMC must maintain a child-care program capable of serving at least 140 children.

¶ 94. In addition to mandating the type and size of the service provided by MRMC, the County restricts future changes to the facility. The County retains extensive control over any modifications made to the child-care facilities and grounds, as was the case in both *Gebhardt* and *Crystal Ridge. See Gebhardt,* 89 Wis. 2d at 111; *Crystal Ridge,* 180 Wis. 2d at 569–70. MRMC must gain approval from the County for any additions or alterations costing more than $50,000, and the County's written consent for any substantial improvements made in the last ten years of the lease. Furthermore, the County requires MRMC to provide fencing and forbids placing signs on the property without permission. The lease also requires MRMC to keep the facilities in good, clean and safe condition, and allows the County the right to enter the premises, with notice, at any reasonable time to determine if MRMC is meeting its obligations under the lease. By emphasizing the

93

County's lack of day-to-day operation of the facility while omitting discussion of these indicia of control, the majority engages in an incomplete analysis.

¶ 95. The majority's narrow focus on the "present financial benefit" factor fails to acknowledge the other benefits the County receives from the lease agreement, including important non-financial benefits. *See* majority op. ¶¶ 60–62. For example, the record indicates that the County entered into the lease agreement with MRMC because there is a public benefit to providing child-care services on County public land. The lease agreement states, "WHEREAS, Lessor is satisfied that it is in the best interest of Milwaukee County and its residents to make said land available to Lessee for the purposes herein stated."

¶ 96. In addition, while the majority points to the 50–year lease as an important indicia of MRMC ownership because the lease term allows MRMC to engage in long-term planning, the opinion fails to acknowledge similar long-term or future benefits to the County. *See* majority op., ¶ 57. Such future financial benefits to the County include MRMC's obligation to pay the County an agreed upon market rental rate for the final twenty years of the lease; the County's right to possession if construction was not completed; the County's right to indemnification; and the County's right to complete title and possession of the child-care facility free of any encumbrances at the end of the lease.

¶ 97. This last benefit is particularly significant because, under the current lease, the County will claim title to the improvements to the property, valued at $1,172,400 in 2003, without any expenditure by the County. In *Gebhardt,* this court determined that a similar lease provision restoring a full and complete possessory interest in the property to the State upon

94

termination of the lease was a controlling factor in our conclusion that the State had beneficial ownership. *Gebhardt*, 89 Wis. 2d at 115. The majority here fails to explain why the future transfer to the County of more than a million dollars in improvements is not worth substantive consideration, in contrast with the indicia of MRMC ownership it chooses to emphasize.

¶ 98. Additionally, the County's current financial benefits are not insignificant. These include MRMC's payment of a pro rata share of the County's obligation to the City of Wauwatosa for the construction of a new fire station and fire fighting positions; MRMC's obligation to purchase water, sewer, and security services from the County throughout the lease term; and the County's receipt of insurance coverage throughout the lease. These current financial benefits, taken with non-financial benefits and future financial benefits, weigh in favor of a determination of County beneficial ownership.

¶ 99. In my view, when the County anticipates a public benefit from an agreement and that benefit is exceeded (MRMC serves more than 140 children), that benefit must weigh heavily on the side of the County being the beneficial owner, along with the other above-mentioned indicia. To ignore the significance of these benefits may distort the importance of the current favorable financial terms enjoyed by MRMC. It is possible the current financial terms are simply the terms required for the County to recruit a non-governmental partner to provide important public benefits, such as ensuring the availability of child-care services to county residents. Indeed, this court recognized in *Gebhardt* that, "public policy favors this type of tax-exempt treatment for conveyance-leaseback arrangements between private enterprise and governmental bodies." *Gebhardt*,

95

89 Wis. 2d at 115. A full analysis of the circumstances in these types of agreements requires taking into account the non-financial benefits that often represent the impetus for making the agreement in the first place.

¶ 100. Such a full analysis is lacking from the majority opinion. I do not disagree with the existence of the facts listed by the majority opinion as indicia supporting MRMC ownership; however, many of the listed facts are merely benefits accorded to MRMC as a lessee, and do not necessarily indicate beneficial ownership.[2] As Wis. Stat. § 70.11(2) provides, "[l]easing the property exempt under this subsection, regardless of the lessee and the use of the leasehold income, does not render that property taxable."

¶ 101. In short, I fail to understand the justification for the majority's disproportionate emphasis on the above indicia purportedly favoring MRMC ownership. Even if the above-mentioned indicia warrant the weight the majority gives them, by discussing a select number of MRMC ownership indicia in detail without similarly addressing any of the County ownership indicia, the majority opinion fails to apply the comprehensive balancing test established by *Crystal Ridge, Gebhardt,* and *Mitchell Aero,* which requires an examination of all relevant indicia.

¶ 102. Once the indicia of County ownership that were omitted by the majority are taken into account,

---

[2] For example, the majority lists as indicia of MRMC ownership the following lessee-specific benefits: (1) the term of the lease; (2) exclusive occupancy, as traditionally accompanies a lease; (3) the right to notice before the County enters the property, which is also generally accorded to lessees; (4) MRMC's retention of title of the day care facility, but only through the duration of the lease; and (5) the amount of rent paid, which I have already addressed. Majority op., ¶ 56.

and once all indicia of beneficial ownership, not just those five favored by the majority, are carefully considered, it becomes clear that the indicia weigh in favor of County, not MRMC, ownership.

¶ 103. In conclusion, the majority opinion fails to accord appropriate weight to indicia of ownership showing that Milwaukee County retains considerable control over the MRMC child-care facility, receives significant present and future financial benefits, and obtains non-financial benefits from the child-care facility lease agreement. As a result, I would affirm that portion of the circuit court's ruling in this case that would allow MRMC a tax exemption under Wis. Stat. § 70.11(2).

¶ 104. For the foregoing reasons, I respectfully concur in part and dissent in part.

¶ 105. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.